UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| PKG CONTRACTING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SMITH & LOVELESS, INC. and MNX, INC., <br><br> Defendants. | CIV. NO. 19-4067 <br><br> MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS |

Pending before the Court is a Motion to Dismiss filed by defendants, Smith & Loveless, Inc. ("Smith & Loveless") and MNX, Inc. ("MNX") (collectively "the Defendants"), for lack of personal jurisdiction and improper venue pursuant to Rule 12(b)(2), (3) of the Federal Rules of Civil Procedure, and a Motion, filed in the alternative, to Transfer the Case to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1404(a) to enforce a forum selection clause in the contract that is at issue in this case. For the following reasons, the Court grants Defendants' Motion to Dismiss pursuant for lack of personal jurisdiction.

## FACTS

MNX is a manufacturers' representative firm which represents twenty-eight manufacturers in the Midwest that serve the water and wastewater industry. Doc. 12, ¶ 1. MNX is a Minnesota corporation with its principal place of business in Rosemount, Minnesota. Docs. 1, ¶¶ 2-3; 12, ¶ 4. MNX does not own or lease any property in South Dakota and does not have any employees, management personnel, officers, or directors that reside in, or are located in, South Dakota. Doc. 12, ¶¶ 5, 6. MNX's primary business is locating buyers for its represented manufacturers' water and wastewater processing equipment and providing customized on-line training. Doc. 12, ¶ 3. Advanced Engineering and Environmental Services Inc. (AE2S) was hired by the owner of the Powder House Pass Waste Water Treatment Project ("the Project"), located in Lead, South Dakota, to design a wastewater treatment system for the Project. Doc. 12, ¶ 8. AE2S sought MNX's assistance in locating a wastewater treatment system manufacturer to supply the treatment system. Doc. 12, ¶ 9.

MNX introduced AE2S to defendant Smith & Loveless and Smith & Loveless supported AE2S' design of a wastewater treatment system for the Project ("the Wastewater Treatment

1

System"). Doc. 12, ¶ 10. Smith & Loveless is a Kansas corporation with its principal place of business in Lenexa, Kansas. Docs. 1, ¶ 2; 8, ¶ 1. Smith & Loveless has no branch offices, facilities, warehouses or employees within the State of South Dakota and does not own or lease any real or personal property within South Dakota. Doc. 8, ¶¶ 2, 3. When the design of the Wastewater Treatment System was complete, AE2S advertised the Project for bid. Doc. 12, ¶ 11.

Plaintiff, PKG Contracting, Inc. ("PKG") was one of multiple contractors that bid on the Project. Doc. 12, ¶ 12. During the bidding process, MNX provided to the bidding contractors the Smith & Loveless scope and price of the wastewater treatment system. Doc. 12, ¶ 13. In a letter dated July 18, 2017, to "All Bidding Contractors," with a subject "MNX inc Quotation Number 170718.2 Powder House Pass WWTF, Lead SD Smith & Loveless – Spec 46 30 02 Factory Built WW System," Mark Enochs ("Enochs"), the sole owner of MNX, stated that "[w]e are pleased to offer our quotation for equipment and services in accordance with the terms and conditions in this proposal as follows . . ."

> Prices are FOB shipping point, freight paid to nearest accessible curb stop at jobsite.
> . . .
> Submittal preparation will begin after an acceptable order is acknowledged by us or our principals, all requisites for copies of plans, specifications, and other pertinent information is received.
>
> Fabrication of equipment will commence after full submittal approval is received.
> . . .
> Prices quoted are firm for a period of 90 days from the bid date[1], provided an acceptable order or letter of intent is received within 30 days of the bid date.
> . . .
> The attached standard terms and conditions of sale of the manufacturers included in this proposal shall apply to any sale.
> . . .
> This proposal/quotation is void at our option unless accepted by you in accordance with our terms and conditions of sale within 30 days from the bid date.
> . . .
> We will be contacting you on Thursday July 20, 2017, with our pricing.

Doc. 12-1. The price provided by MNX to PKG for the Wastewater Treatment System on July 20, 2017, was $325,416. Doc. 8, ¶ 6. MNX's only form of compensation arising from the Project would have been commission on the sale of Smith & Loveless's Wastewater Treatment System to PKG. Doc. 12, ¶ 17.

---

[1] The bid date provided in the July 18, 2017, letter from MNX to All Bidding Contractors was July 20, 2017. Doc. 12-1.

2

Included with the July 18, 2017, letter from MNX to All Bidding Contractors was a sales agreement by Smith & Loveless ("the Sales Agreement") that provided the specifications for the Wastewater Treatment System and the terms of the sale. Docs. 8-1; 12-1. Among the accessories included in the Wastewater Treatment System were six blowers[2]. Docs. 8-1; 12-1. The Sales Agreement quotation date was July 18, 2017. Docs. 8-1; 12-1. Therein, on the first and last pages of the Sales Agreement, in bold face font is stated that "[t]he Sales Representative is not an agent or employee of Seller and it not authorized to enter into any agreement on Seller's behalf or bind Seller in any way." Docs. 8-1; 12-1. The Sales Agreement stated that the price would be provided, that pricing was firm for 60 days from the date of the proposal and included "[f]our days over one trip for supervision of initial operation and training," and that shipping was F.O.B. factory. Doc. 12-1. Included among the "Additional Terms and Conditions" of the Sales Agreement was the following:

1. **GENERAL A.**

   . . .

   Prices are firm for sixty (60) days after the bid date provided a firm order is received at the factory within that time period and provided approved Submittal Data is received at the factory within forty-five (45) days from the date submittals are forwarded from the factory. In the event firm orders and Submittal Data are not received by Seller within the times set forth above, then price and delivery estimates may change due to changes in the costs of material and labor and/or factory capacity at the time when the firm orders or approved Submittal Data is received by Seller.

   . . .

   THIS AGREEMENT IS NOT BINDING ON SELLER UNLESS SIGNED ON SELLER'S BEHALF BY AN OFFICER OR MANAGER OF SELLER.

   . . .

   This Agreement constitutes the entire contract between the parties with respect to said equipment (any prior agreement, representation, covenant or warranty, written

---

[2] Specifically, the Wastewater Treatment System specifications in the Sales Agreement included:
   Two – Main blower driven by a 30 HP motor, 460 volt, 3 phase, 60 Hertz, horizontal. Each blower to deliver 515 SCFM of free air measured at the blower inlet of 11 PSI. One duty blower per plant with one standby. Each blower to be equipped with inlet filter/silencer, discharge silencer, gate vales, check valves, pressure relief valves, pressure gauge and sound reduction enclosure.
   Two – Flow equalization/sludge storage blowers shall be driven by a 5 HP, 460 volt, 3 phase, 60 Hertz, horizontal TEFC. Each blower to deliver 90 SCFM of free air measured at the blower inlet of 11 PSI. Each blower to be equipped with inlet filter/silencer, discharge silencer, gate valve, check vale, pressure relief valve, pressure gauge, and sound reduction.
   Two – Effluent aeration blowers shall be driven by 2.5 HP, 460 volt, 3 phase, 60 Hertz, horizontal TEFC. Each blower to deliver 10 CFM of free air measured at the blower inlet of 11 PSI. Blower to be equipped with inlet filter/silencer, discharge silencer, gate valve, check valve, pressure relief valve, pressure gauge, and sound reduction.
Docs. 8-1; 12-1.

> or oral, being superseded hereby) and may not be amended or modified except by a written instrument duly executed by both parties . . . .
>
> . . .
>
> This Agreement is governed by and subject to the laws of the State of Kansas and the Buyer by executing this agreement agrees to submit to the Jurisdiction of the State of Kansas and the venue for any disputes between the parties will be in the District Court of Johnson County, Kansas, or the Federal District Court of Kansas.
>
> . . .
>
> **2. NOTICE TO PROCEED**
>
> . . .
>
> In the event Seller does not receive approved Submittal Data within forty-five (45) days after Seller's submission of submittal data for approval, then Seller reserves the right to amend price and delivery of the equipment being sold. Final approved Submittal Data means approval by Buyer (or Buyer's representative) of Seller's Submittal Data and/or after all notations or comments have been clarified, approved, and inserted into Seller's manufacturing documents at which point Sellers estimated completions schedule commences . . . Seller agrees to furnish only the equipment included in Seller's quotation and/or as described and modified in the Submittal Data. Approval of the Submittal Data constitutes acceptance of the equipment in the configuration described therein.

Docs. 8-1; 12-1.

On July 31, 2017, Mike Sikorski, Project Engineer for PKG, emailed Enochs at MNX stating that he was asked to explore whether, "there are any money savings for Lead." Doc. 8, ¶ 7. Thereafter, PKG and MNX discussed "cost reduction options" so as to reduce the price for the Wastewater Treatment System and talked about setting up a conference call with PKG, AE2S and Smith & Loveless, but there is no evidence in the record that the parties ever conducted the conference call. Docs. 8, ¶ 7; 8-2. On August 15, 2017, Sikorski emailed Enochs stating that he had heard that the Project owner had "recommended award of the project" and that MNX and Smith & Loveless may want to hold tight on finding cost reduction options. Doc. 8-2. Enochs responded that he may keep Smith & Loveless looking at options should they be needed. Doc. 8-2. PKG submitted the lowest bid and was selected to construct the Project. Doc. 12, ¶ 14.

After PKG was selected, the owner of the Project and PKG entered into a contract, and PKG sent a purchase order for the Wastewater Treatment System in the amount of $325,416 plus sales tax ("the Purchase Order") to MNX which MNX then forwarded to Smith & Loveless. Docs. 12, ¶¶ 15, 16; 8-3. The Purchase Order was dated September 14, 2017. Doc. 8-3. Smith & Loveless received PKG's Purchase Order on September 22, 2017, which was 66 days after the

4

July 18, 2017, quotation date in the Sales Agreement and 64 days after PKG had received the Proposed Sales Agreement. Doc. 8, ¶ 8; 8-3.

Smith & Loveless thereafter advised PKG in a conversation and by letter dated October 16, 2017, that Smith & Loveless could not accept PKG's Purchase Order. Doc. 8, ¶ 9. In its October 16th letter, Smith & Loveless advised PKG that blowers could be deleted from the scope of the Wastewater Treatment System specifications, that "[a]ll six blower mechanisms will require purchase through another vender" which would put the sale price at $350,137. Docs. 8, ¶ 9; 8-4. If the blowers were deleted from the Wastewater Treatment System specifications and Smith & Loveless standard PLC controls were used for the filter only, then Smith & Loveless advised PKG that it could offer a price of $279,899. Docs. 8, ¶ 9; 8-4. The letter further provided that "[f]or [Smith & Loveless] to accept a contract per spec[ifications] the bid should have been $483,102 but S&L would be able to accept the project per the bid documents for our cost of $420,096." Doc. 8, ¶ 9; 8-4.

By letter dated November 17, 2017, PKG's advised Smith & Loveless and MNX that it was going to purchase the Wastewater Treatment System from alternative sources. Doc. 8, ¶ 10.

On March 26, 2019, PKG filed a complaint against Smith & Loveless and MNX alleging claims for breach of contract and promissory estoppel. Doc. 1. Smith & Loveless and MNX have moved to dismiss PKG's Complaint for lack of personal jurisdiction and improper venue pursuant to Rule 12(b)(2), (3) of the Federal Rules of Civil Procedure, Docs. 6, 10, or, in the alternative, have moved to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court of Kansas pursuant to the forum selection set forth in the Sales Agreement. Docs. 6, 10.

## STANDARD OF REVIEW

### A. Rules 12(b)(2) Standards

To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). In carrying that burden, the plaintiff's *prima facie* showing is tested through the pleadings as well as affidavits and exhibits presented in opposition to the defendant's motion to dismiss. *Dever v. Hentzen Coatings, Inc. v. DHJ Indus., Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974)); *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) ("Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings

alone, but by the affidavits and exhibits supporting or opposing the motion.") (internal citations and quotations omitted). For purposes of the *prima facie* showing, the evidence, taken as true, is viewed in the light most favorably to the plaintiff. *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

While a plaintiff bears the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Epps*, 327 F.3d at 647.

### B. Rule 12(b)(3) Standards

Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). If a defendant prevails on a Rule 12(b)(3) motion, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a). "Although the decision to transfer or dismiss is committed to the sound discretion of the district court, the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Crowley v. Napolitano*, 925 F.Supp.2d 89, 93 (D.D.C. 2013) (citation omitted); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) (stating that "[w]hether dismissal or transfer is appropriate lies within the sound discretion of the district court").

The question of whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391. *Id.* That provision states that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." *Id.* (quoting § 1391(a)(1) (emphasis added)). Section 1391 further provides that:

> a civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

6

§ 1391(b). The Supreme Court has stated that "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in section 1391(b)." *Atl. Marine Const. Co.*, 571 U.S. 49, 56 (2013). "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.*; *see also* 28 U.S.C. § 1406(a).

When reviewing a motion to dismiss under Rule 12(b)(3), the Court applies the same standard used for other motions to dismiss. *Transocean Grp. Holdings Party Ltd. v. S.D. Soybean Processors*, 505 F. Supp. 2d 573, 575 (D. Minn. 2007); *Fitzgibbons v. Hill-Rom Co.*, Civ. No. 12-4009, 2012 WL 12548936, at *3 (D.S.D. Jun. 28, 2012) (J. Schrier) (citing *Transocean Grp. Holdings Party Ltd.*, 505 F.Supp.2d at 575)). The Court must construe all facts in the light most favorable to the non-moving party, and take the facts alleged in the complaint as true. *Transocean Grp. Holdings Party Ltd.*, 505 F.Supp.2d at 575. Unlike motions to dismiss under Rule 12(b)(6), when ruling on a motion to dismiss for improper venue, the court may consider matters outside the pleadings. *Spanier v. Am. Pop Corn Co.*, Civ. No. 15-4071, 2016 WL 1465400, at *10 (N.D. Iowa Apr., 14, 2016). The defendant, as the moving party, has the burden of establishing that venue is improper. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947)[3].

## DISCUSSION

### I. Personal Jurisdiction

Personal jurisdiction in a diversity case such as this exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *K-V Pharm. Co. v. J.*

---

[3] In *Spanier v. Am. Pop Corn Co.*, the court noted that there is a split of authority among the circuits regarding who bears the burden of proof in a challenge to venue. 2016 WL 1465400 at *10 n.5. The court stated that in *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1983), the Third Circuit Court of Appeals explained that "[b]ecause federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." *Id.* (citing *Myers*, 695 F.2d at 724). As a result, in a motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Id.* (citing *Myers*, 695 F.2d at 724). The *Spaniers* court noted that in *Myers*, the court observed that venue, unlike jurisdiction "is not whether the court has authority to hear the case but simply where the case may be tried . . . a motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense . . . It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it." *Id.*

The court in *Spanier* noted that by contrast, the Second Circuit Court of Appeals in *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005), as well as number of other federal district courts, have imposed the burden on the plaintiff of proving that venue is improper in keeping with the rule applied in the context of subject matter and personal jurisdiction defenses. *Id.* As noted by the court in *Spanier*, "[w]hile there may be valid arguments for requiring a plaintiff to establish venue," the Eighth Circuit Court of Appeals' decision in *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947) is controlling here.

*Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quoting *Dever*, 380 F.3d at 1073). South Dakota's long-arm statute confers jurisdiction to the fullest extent permissible under the Due Process Clause of the Fourteenth Amendment, so the question here is whether asserting personal jurisdiction over Defendants comports with due process. *See Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

Due process requires "minimum contacts" between a nonresident defendant and the forum state, such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citation omitted). The minimum contact inquiry focuses on whether the defendant purposely availed itself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted). This purposeful-availment requirement is met where the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted). A foreign defendant may not be haled into court "solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Id.* at 475 (internal quotations and citations omitted). Even if the defendant has purposely established the necessary "minimum contacts" within the forum State, consideration of "fair play and substantial justice" may nevertheless defeat the reasonableness of jurisdiction. *Id.* at 476 (citation omitted).

"Personal jurisdiction can be specific or general." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). PKG argues only that Defendants are subject to specific jurisdiction in South Dakota. "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003) (citing *Helicopteros Nacionales de Colombina, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)); *Burger King*, 471 U.S. at 472 (stating that minimum contacts are established if a "defendant has 'purposely directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' the activities."). Where the litigation results from alleged injuries that "arise out of or are connected with the [defendant's] activities within the [forum] state," the defendant ordinarily should reasonably anticipate being haled into court in the forum. *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 319 (1945). Contacts between the plaintiff and the forum

state do not satisfy this inquiry. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) ("The plaintiff cannot be on the only link between the defendant and the forum). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Id.* (citing *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) (quoting *Burger King*, 471 U.S. at 475)); *see also Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912-13 (8th Cir. 2012).

"To assess whether a defendant has purposely availed itself of the forum and established minimum contacts, we examine the nature, quality, and quantity of the defendant's contacts with the forum State and the connection between the cause of action and those contacts." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522-23 (8th Cir. 1996)). For contractual claims, personal jurisdiction is proper where the defendant "reach[es] out beyond one state and create[s] continuing relationship and obligations with citizens of another state." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 473). But a contract with a citizen of a State alone is insufficient to establish minimum contacts with that forum. *Id.* (citing *Burger King Corp.*, 471 U.S. at 478). To determine whether a defendant purposely established minimum contacts with the forum, a court must evaluate prior negotiations, the parties' actual course of dealing, the terms of the contract, and its contemplated future consequences. *See K-V Pharmaceutical Co.*, 648 F.3d at 594.

In *K-V Pharmaceutical Co.*, the Eighth Circuit Court of Appeals reversed the district court's conclusion that it lacked personal jurisdiction over a dispute involving a contract and a misappropriation of trade secrets between a corporation with its principal place of business in Missouri and a Spanish corporation with its principal place of business in Spain. 648 F.3d at 590-91. The court found that the defendant's actual contacts with Missouri included its officials coming to Missouri on one occasion to renegotiate the contract with the plaintiff, its paying money to the plaintiff as agreed upon in the contract, and its exchanging many letters, emails, and telephone calls with the plaintiff throughout the twelve years that the contract was in existence. *Id.* at 594-95. Even though the contract was terminated and its terms were not fully carried out, the court also found that under the terms of the contract, the defendant expected to have even more extensive contacts with Missouri. *Id.* at 594. Specifically, the Court noted that per the contract,

9

the foreign defendant had agreed to sell and ship its product to the plaintiff in Missouri.[4] *Id.* at 594 ("A delivery term that requires a nonresident defendant to deliver an item to a plaintiff in the plaintiff's forum state supports the existence of personal jurisdiction over the nonresident defendant."). The court also found that the choice of law provision specifying that the contract was to be construed under Missouri state law, although insufficient on its own to confer personal jurisdiction, further supported a finding of personal jurisdiction over the foreign corporation. *Id.*

In *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, the Eighth Circuit concluded that a district court in Iowa had personal jurisdiction over a foreign corporation that was sued by an Iowa corporation for breach of contract. 799 F.3d at 978. In evaluating the defendant's contacts with the forum state, the court found of consequence the fact that the defendant had solicited the business relationship with the plaintiff in the forum state, had communicated with the plaintiff via email and telephone while negotiating the contract over three months, and that after the contract was executed, communicated daily with the plaintiff via e-mail and telephone for close to two years. *Id.* at 980. The court found that the contract further required the defendant to make pre-production samples and that the defendant mailed thousands of such samples to the plaintiff in the forum state for its approval. *See id.* at 981. Further, the contract required the defendant to remit payment to the plaintiff in the forum state. *Id.* While the contract incorporated a clause selecting Hong Kong courts as a non-exclusive forum and its choice of Hong Kong law, the court concluded that such facts did not make the exercise of jurisdiction in Iowa unreasonable in light of the defendant's other contacts with the forum. *See id.* at 982.

The Court also finds instructive the Eighth Circuit's decision in *Wells Diary, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515 (8th Cir. 2010). There, the court concluded that the district court in Iowa had personal jurisdiction over the non-resident defendant. *Id.* at 517. The court found that "[c]ertain meaningful events in the parties' business relationship had occurred in Iowa." *Id.* at 519. Specifically, the court noted that with each of defendant's more than one-hundred transactions over the course of two years (including the eleven at issue in the lawsuit) with the forum plaintiff, the defendant sought credit approval in Iowa, accepted delivery of the plaintiff's

---

[4] The contract provided that the product was to be shipped "f.o.b. [plaintiff's] facility, St. Louis, Missouri," and that "[t]itle to [the product] . . . shall pass to [the plaintiff] upon delivery by [the foreign corporation]." *K-V Pharm. Co.*, 648 F.3d at 594.

products in Iowa[5], and allowed its customers to take possession of the product there. *Id.* at 519-20. Although the defendant's initial contacts with the plaintiff took place in California, and its communications with the plaintiff's Iowa office only occurred via telephone, facsimile, and mail, the court found that the defendant had solicited the plaintiff's business, knowing that plaintiff was an Iowa corporation. *Id.* at 519-20.

Returning to the case at bar, the Court finds that unlike the cases cited upon, Defendants lack sufficient minimum contacts with South Dakota such that they could reasonably anticipate being haled into court in South Dakota for disputes arising out of their relationship with PKG. Unlike the cases cited above, none of the parties to this action are either incorporated or have a principal place of business in the forum state.[6] In looking at the negotiations between the parties and their actual course of conduct, no electronic or telephone conversations appear to have taken place between the parties to this lawsuit in South Dakota, nor did any face-to-face meetings take place in the forum. Although the Sales Agreement provided that the sales price included freight paid to deliver the product to the jobsite in South Dakota, unlike the cases cited above, the Sales Agreement provided that PKG would accept ownership of the Wastewater Treatment System at PKG's facility in Kansas, rather in in the forum state, and that payment was to be remitted to Smith & Loveless in Kansas. *See, e.g., Sheer Beauty, Inc. v. Mediderm Pharms. & Lab.*, Civ. No. 05C-02-174 MMJ, 2005 WL 3073670, at *2 (Del. Super. Ct. Oct. 27, 2005) (noting that if a product was shipped "F.O.B. Murietta California or Ontario California," title to the goods passed in California, and "the title and risk of loss would have passed to the buyer when the seller put the goods in the possession of the commercial carrier."). Finally, without deciding whether the forum selection clause is mandatory or permissive, the fact that the Sales Agreement provided that venue will exist in both county and federal district court in Kansas and provided that the Sales Agreement would be governed and construed under the laws of Kansas is an additional factor the Court may consider in its analysis. While plaintiff PKG certainly has a connection with South Dakota by virtue of bidding on and being awarded the Project in South Dakota, it is Defendants' contacts with the forum state that are applicable to this Court's analysis. Considering the totality of the

---

[5] The contract required deliver "F.O.B. Sellers's Plant" which was located in Iowa. *Wells Dairy, Inc.*, 607 F.3d at 520.

[6] "[T]he paradigm forum for the exercise of general jurisdiction" over a corporation is its place of incorporation and principal place of business—its "home." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

circumstances, the Court concludes that Defendants contacts with this forum are insufficient such that they could reasonably anticipate being haled into Court in South Dakota in this matter.

## II. Dismissal or Transfer Pursuant to 28 U.S.C. § 1406(a)

Title 28, section 1406(a) of the United States Code provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A federal district court may transfer a case pursuant to section 1406(a), despite the fact that it lacks personal jurisdiction over the defendant. *SFRL, Inc. v. Galena State Bank & Tr. Co.*, Civ. No. 10-4152, 2011 WL 4479065, at *5 (D.S.D. Sept. 22, 2011) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)). In *Mayo Clinic v. Kaiser*, the Mayo Clinic and its doctors were sued by an Illinois resident in a medical malpractice lawsuit in the Southern District of Illinois. 383 F.2d 653, 653 (8th Cir. 1967). The defendants moved to quash the service of process and to dismiss the complaint for lack of jurisdiction and the plaintiff countered with a motion to transfer to the proper federal district court in Minnesota. *Id.* The court granted the defendants' motion to quash as well as the plaintiff's motion to transfer. *Id.* After the Minnesota service of process, the defendants moved for dismissal, arguing, in part, that the Illinois District Court lacked the authority to transfer the case under § 1406(a) absent having personal jurisdiction over them and because venue was proper in Illinois[7]. *Id.* at 654. The district court denied the defendants' motion to dismiss, holding that the action was transferable under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). *Id.*

On appeal, the court examined whether the Illinois District Court was authorized under § 1406(a) to transfer the case to Minnesota district court. *Id.* The court rejected the defendants' argument that § 1406(a) was only applicable when venue was found to be improper. *Id.* at 654-55. In so holding, the court relied on *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) wherein the Supreme Court considered whether a district court's attempt to transfer a case was rendered ineffective because, among other defects, it lacked personal jurisdiction over the defendants. The

---

[7] The venue statute in effect at the time plaintiff filed his complaint in the District of Illinois provided:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside.

28 U.S.C. § 1391(a). Because the plaintiff in *Mayo Clinic* was a citizen of Illinois, venue in the Illinois District Court was proper. *Kaiser v. Mayo Clinic*, 260 F.Supp. 900, 902-03 (D. Minn. 1966).

Court in *Goldlawr* concluded that it was not. *Id.* at 465. The Court noted that "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Id.* at 466. The Court stated that the statute's clear underlying purpose was to "remove[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Id.* at 466-67.

In *Mayo Clinic*, the court stated that "the degree of impropriety in the selection of the forum is immaterial [because in *Goldlawr*], the Supreme Court [ ] stated 'however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not,' the language of § 1406 is broad enough to authorize the transfer." *Id.* at 655. "Section 1406(a) operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there." *Id.* at 656 (internal quotations omitted).

If a court decides to transfer under section 1406(a), it must send the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Thus, the court to which the case is transferred must be one in which venue would have been proper and that could exercise personal jurisdiction over the defendant had the action been commenced there. 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3827 (4th ed.); *see also In re Nine Mile Lte.*, 692 F.2d 56, 58-59 (8th Cir. 1982); *CSI Tech., Inv. v. Commtest Instruments Ltd.*, Civ. No. 08-450, 2008 WL 4057546, at *2 (D. Minn. Aug. 26, 2008). In suits against multiple defendants, transfer is proper only to a district in which all of them are subject to personal jurisdiction and in which venue is proper. 15 Wright & Miller, *Federal Practice and Procedure*, § 3845 (4th ed.).

It appears that venue is proper in Kansas under § 1391 because one of the defendants, Smith & Loveless, is subject to general jurisdiction there since that is where it is incorporated and has its principal place of business. The Court is unable to determine on the record before it, however, whether the district court in the District of Kansas has personal jurisdiction over MNX.

The jurisdiction of a district court over a nonresident defendant in a suit based on diversity of citizenship is determined by the law of the forum state. *Fed. Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1304-05 (10th Cir. 1994). The proper inquiry is, therefore, whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution. *Id.* at 1305. "Because the Kansas long-arm

13

statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," a Court may "proceed directly to the constitutional issue." *Id.* (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

In determining whether the exercise of personal jurisdiction over MNX by the District of Kansas would comport with the principals of due process, the Court must determine, first, whether MNX "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Pro Axess, Inc. v. Orlux Distr., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Second, the Court must determine whether PKG's claims "arises out of or results from actions by [MNX itself] that create a substantial connection with the forum state." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

The Court concludes that on the record before it, there is has been no prima facie showing that Kansas District Court has personal jurisdiction over defendant MNX. As stated above, MNX is a Minnesota corporation with its principal place of business in Minnesota, and Enochs is its sole employee. There is no information in the record showing that MNX owns or leases any real property in Kansas, or has any agents there. There is also little information in the record about the nature of MNX's relationship with Smith & Loveless in Kansas. The record reflects that MNX acted as an intermediary between Smith & Loveless and PKG during their negotiations of the Sales Agreement and sent email communications to Smith & Loveless in Kansas during this process. However, email and telephone communications alone do not qualify as purposeful activity. *See Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) ("Ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity.'")). Moreover, there is no evidence of "any long-term or continuing obligations" by MNX involving Kansas. *See id.* The compensation MNX would receive from its work on this deal consisted solely of commission on the sale by Smith & Loveless of the Wastewater Treatment System to PKG. There is also no evidence that any failure on MNX's part to forward PKG's purchase agreement to Smith & Loveless within the pricing deadline took place in Kansas nor that the causes of action in this case arose out of or are related to any other of MNX's activities directed at Kansas.

While frequently the interests of justice support transfer rather than dismissal under section 1406(a), transfer is not warranted under the record before the Court because there has been no

prima facie showing that the District of Kansas is a district or division in which this case could have been brought against MNX at the time of filing.

Accordingly, it is hereby ORDERED:

1. Defendants' Motions to Dismiss, Docs. 6, 10, is GRANTED as the Court lacks personal jurisdiction over Defendants. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE; and

2. Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), Docs. 6, 10, is DENIED.

Dated this 25th day of February, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK